STATE OF NEBRASKA, APPELLEE, v. STEVEN VAN ACKEREN, APPELLANT.

235 N. W. 2d 210

Filed November 6, 1975. No. 39864.

Paul E. Watts, J. Joseph McQuillan, Gerald E. Moran, and Robert C. Sigler, for appellant.

Paul L. Douglas, Attorney General, and Terry R. Schaaf, for appellee.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

CLINTON, J.

Defendant was found guilty by a jury on a charge of receiving stolen property and sentenced to a term of 7 years in the Nebraska Penal and Correctional Complex. He appeals and assigns as error: (1) The overruling of a motion to suppress evidence seized in the search of an automobile belonging to Susan Humphrey, a companion of the defendant Van Ackeren. (2) The denial of defendant's motion for a mistrial, the ground for which is a claimed violation of a pretrial order of the court directing the prosecuting witnesses not to describe the defendant as a known burglar or thief. or use other adjectives which might so imply. (3) The introduction over objection of a taped telephone conversation between the defendant and a police officer without first screening the tape in camera to eliminate irrelevant portions. (4) The denial of a motion for mistrial founded upon alleged prosecution misconduct in permitting the jury to

see an exhibit, to wit, a money bag which was never offered in evidence. We affirm.

We treat the assignments in the order listed and will recite or summarize evidence as necessary in connection with each assignment.

The first assignment has several facets. The defendant first contends that the search of the automobile of Susan Humphrey and the luggage therein was the fruit or product of Susan's arrest which was made without probable cause and therefore the motion to suppress the stolen property found in the search should have been granted. He cites, among other cases, Wong Sun v. United States, 371 U. S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441. This issue must be decided against the defendant on the basis of his lack of standing to challenge Susan's arrest. He cites no authority which requires exclusion of evidence procured by means of the illegal arrest of a third person. The general rule on standing is: "In order to have standing to raise fourth amendment rights the individual must show he has been injured by the search or seizure (invasion of property or privacy rights), not merely by use of the evidence." Knox, Some Thoughts on the Scope of the Fourth Amendment and Standing to Challenge Searches and Seizures, 40 Mo. L. Rev. 1 (1975). See, also, Jones v. United States, 362 U. S. 257, 80 S. Ct. 725, 4 L. Ed. 2d 697; Alderman v. United States, 394 U. S. 165, 89 S. Ct. 961, 22 L. Ed. 2d 176. The above position has been adopted by this court. State v. Waechter, 189 Neb. 433, 203 N. W. 2d 104; State v. McCune, 189 Neb. 165, 201 N. W. 2d 852; State v. Rice, 188 Neb. 728, 199 N. W. 2d 480.

An application of the general rule as it applies to the claimed invalid arrest of a third party is found in Wong Sun v. United States, *supra*. Wong Sun contended that, since the discovery of the heroin was based on Toy's statements resulting from an invalid arrest of Toy, the heroin was inadmissible against him (Wong Sun). The United States Supreme Court disagreed, saying: "Our

holding . . . that this ounce of heroin was inadmissible against Toy does not compel a like result with respect to Wong Sun. The exclusion of the narcotics as to Toy was required solely by their tainted relationship to information unlawfully obtained from Toy, and not by any official impropriety connected with their surrender by Yee. The seizure of this heroin invaded no right of privacy of person or premises which would entitle Wong Sun to object to its use at his trial." See, also, United States v. Galvez, 465 F. 2d 681 (10th Cir., 1972). It is clear that the arrest of Susan Humphrey did not invade any constitutional or statutory rights of the defendant. We need not pass upon the validity of the arrest.

Van Ackeren also lacks standing to challenge the search of the automobile. The automobile searched was the property of and in the sole possession of Susan Humphrey when the search was made. Under the general rule the defendant has no standing to challenge that search. See Brown v. United States, 411 U. S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (search of a premises in which the defendants had no proprietary or possessory interest).

As to the warrantless seizure of the contents of the suitcase, the defendant would, under the language of our statute, be a person aggrieved by the search and seizure and therefore have standing on this issue. § 29-822, R. R. S. 1943. The search was directed at him and the State's case against him depended upon Van Ackeren's possession of the stolen goods. See, Jones v. United States, supra; Brown v. United States, supra.

Defendant challenges the warrantless search and subsequent seizure of items from the suitcase, contending that Susan Humphrey's consent to search it was not validly obtained. The legal effectiveness of the consent depends upon two factors: (1) Was Susan Humphrey's consent voluntary, and (2) if it was, did her consent bind the defendant? We will, for the purpose of determining these questions, assume that Susan was in

custody at the time the consent was given although that such was the fact is not clear from the record before us.

With respect to the voluntariness of Susan's consent, the evidence shows that she executed at police request a consent to search her automobile and "to remove from my . . . motor vehicle whatever documents, articles, or other items of property whatsoever, which they deem pertinent to their investigation, with the understanding, of course, that these officers will give me a receipt for whatever they remove." The written consent also stated: "I AM GIVING THIS WRITTEN PERMISSION to these police officers, freely and voluntarily, without any threats or promises having been made to me and after having been informed by these officers that I have the right to refuse to permit this search and seizure and that any property seized may be used against me in the event of prosecution." Defendant contends that Susan's written consent was involuntary because she was coerced into giving it by the police.

At this point, a recital of some of the evidence pertaining to the point in question is pertinent. At about 2 o'clock p.m., on February 21, 1974, the residence occupied by Susan Humphrey and the defendant was under surveillance because the defendant was suspected of being a receiver of stolen property. At that hour four persons were seen loading luggage into the Humphrey automobile and then driving away. These persons included Susan Humphrey and the defendant, Van Ackeren, who was the driver. The officer who was conducting the surveillance knew that the motor vehicle operator's license of Van Ackeren was currently under suspension. This officer directed uniformed officers to stop Van Ackeren which was done. Van Ackeren failed to produce a valid Nebraska operator's license and was placed under arrest and taken to the police station in a patrol car. Susan and the others were not arrested. They drove to the police station in Susan's car with the in-

tention of picking up the defendant after he had made bond, and then continuing to Eppley Air Field where they had planned to take a flight to Denver, Colorado. While the defendant was making bond, Susan and the others waited in the lobby of the police station. Defendant made bond and left the premises without the departure being known to his companions. Susan was asked by a police officer if they might search her car. The evidence is conflicting thereafter. The substance of Susan's testimony was to the effect that she initially refused to allow a search and then signed the consent form later only because of threats of imprisonment and mental and emotional confusion on her part, arising from the fact that this was her first arrest. The officer testified that Susan initially consented orally and then withdrew the consent when a male companion objected. The officer testified that he then told the parties that he would get a search warrant. This officer then consulted a superior. Susan then either accompanied or was taken by the officer to an interrogation room. There, further explanations were made by another officer and a consent was obtained and the search thereafter made. Both officers denied making threats of any kind and testified that after Susan read the consent she stated she understood it and then signed it. It appears that this was Susan's first encounter with the police and that she was nervous, anxious, and had tears in her eyes. There is evidence that later, after her arrest was announced to her and she called the home of her sister, she was then crying a great deal and having difficulty making herself understood.

Susan testified, among other things, that before she signed the consent the county attorney appeared and told her that Van Ackeren had gotten away before but that they would get him this time. She construed this as a threat. The county attorney was called by the prosecutor and testified flatly that he had never seen Susan Humphrey previous to the suppression hearing,

did not know her, and was not at the police station at the time and place in question and had never talked to the witness at any time.

This court and the Supreme Court of the United States have both held that the determination of whether a consent to search is voluntarily given is a question of fact. State v. Skonberg, *ante* p. 550, 233 N. W. 2d 919; Schneckloth v. Bustamonte, 412 U. S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854. The burden of proving the voluntariness of the consent is upon the prosecutor. Schneckloth v. Bustamonte, *supra*. The voluntariness of the consent to search should be determined from the totality of all the circumstances surrounding it. Schneckloth v. Bustamonte, *supra*. The fact that a person is in custody when the consent is given is one of the circumstances to be considered. United States v. Townsend, 510 F. 2d 1145. Applying these criteria to the evidence before us we have no difficulty in finding that the trial court was correct in its ruling. The determination turns almost wholly upon the relative credibility of Susan Humphrey and the two police officers involved. The applicable standard of review by this court, we believe, should be the same as applied in other similar types of cases. The findings of fact by the District Court will not be set aside on appeal to this court unless they are clearly erroneous. In determining whether the District Court's findings are clearly erroneous, this court takes into consideration the advantage of the District Court in having heard the oral evidence. See State v. Crenshaw, 183 Neb. 449, 161 N. W. 2d 502 (post conviction).

Was the consent binding upon the defendant? When the prosecution seeks to justify a warrantless search by proof of voluntary consent it is not limited to proof that the consent was given by the defendant, but may show that the permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. United States v. Matlock, 415 U. S.

164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (room jointly occupied by the defendant and the woman with whom he was living); Frazier v. Cupp., 394 U. S. 731, 89 S. Ct. 1420, 22 L. Ed. 2d 684 (duffel bag jointly used by the defendant and his cousin and left in the cousin's home). The evidence in this case clearly establishes common control and use of the property in question. It was apparently defendant's contention that the suitcase in which the stolen property was found belonged to him, thereby precluding Susan's consent to search it from binding him. The defendant, however, did not choose to testify at the suppression hearing and the only testimony there adduced as to the ownership of the suitcase in question is the testimony of a police officer that Susan Humphrey stated that the luggage was hers. Her own testimony at the suppression hearing appears to be that a certain blue suitcase was hers.

The evidence at trial showed without contradiction that the suitcase in question was being used by both Susan Humphrey and Van Ackeren. The defendant testified that he had instructed Susan to pack the suitcase. The two were living together at the time in Susan's apartment. The suitcase in question contained clothing belonging to both, packed expressly for a trip which they expected to take together, as well as the items identified as stolen. Susan's voluntary consent to search the suitcase was binding on defendant.

We now turn to the defendant's second assignment. Previous to commencement of trial, counsel for the defendant moved the court to order the prosecutor "not to introduce evidence to the effect that the defendant is a known burglar, and that the prosecutor be told to tell his witnesses not to be bringing up and introducing evidence that he is a known burglar and thief, or any other adjectives to describe the same." The court granted the motion saying: "The prosecutor is ordered prior to calling any of his witnesses to the stand to admonish and order the witnesses not to describe the de-

fendant in the terms and words which the attorney for the defendant just described, or by the use of any other adjectives which their imagination may embellish."

Shortly after the second prosecution witness began his testimony, he was asked: "Q. Do you know why the car was initially stopped, Officer Swiercek? A. Yes. Q. Tell us why? MR. WATTS: Objected to as conjecture and suspicion. A. We believed that the automobile was loaded with stolen merchandise and was going to be taken out of town and sold to a fence." Motion was made to strike and for a mistrial. The court overruled the motion for a mistrial and told the jurors that it had sustained the objection and admonished them to disregard the witness' statement as to the reason for stopping the car.

The witness' statement does not appear to be a literal violation of the court's order. Likewise it appears that this was not the answer which the prosecutor anticipated. However, wholly apart from the order of the court on the motion, the objection was obviously a good one for the reasons stated in the objection and others, including lack of appropriate foundation and immateriality. However, the error was not such as to require a new trial. The suspicion of the officer was proved by subsequent competent evidence to be true. The mere statement of the suspicion of the officer can hardly have added any weight to the later direct evidence. This will be apparent when we discuss the next assignment of error. No judgment shall be set aside, or new trial granted, or judgment rendered in any criminal case on the grounds of misdirection of the jury, or the improper admission or rejection of evidence, or for error as to any matter of pleading or procedure, if the Supreme Court, after an examination of the entire cause, finds that no substantial miscarriage of justice has actually occurred. § 29-2308, R. R. S. 1943.

Some background material is necessary in considering the third assignment. Late in the afternoon or early

in the evening on the day of the defendant's arrest, after he had made bond and departed, he called the police station and asked to speak to a detective sergeant with whom he was apparently acquainted. After a brief conversation, which for some reason was apparently interrupted, the defendant gave the detective a telephone number to call when he was again free. This was a Denver, Colorado, number. A few minutes later the sergeant called the number, but the defendant did not answer and a female voice stated that she would deliver the message to Van Ackeren. A short time later the sergeant received a call from the defendant and on this occasion the sergeant recorded the conversation. Although the defendant purportedly was seeking information, what really occurred was that he made damaging admissions. The substance of the admissions was that he was no longer a burglar but had risen one step above that and was now a "fence." It was less risky. Also, he was apparently attempting to gain official favor by offering to give information on a more important "fence" which would help clear up a burglary in which much valuable property had been taken. At trial, when the defendant took the stand in his own defense, he admitted the conversation but attempted to explain it in a rather vague way, the substance of which was that he did not intend to be taken literally and that he was merely making the statements in order to attempt to get information. He further stated that he had had no information on the important "fence" to give. The conversation was clearly voluntary and volunteered. The defendant was not in custody and the statements were admissible as admissions against interest. As will be seen from the quotation from the telephone conversation the admissions were subject to the construction that they related to property which was the subject of the present charge against the defendant.

The basis of the defendant's claim of error is that the admission of the tapes violated the pretrial order direct-

ing the prosecution witnesses not to characterize the defendant in the manner previously mentioned. Defendant also contends that the tapes should have been screened in camera and irrelevant portions omitted. Before the tapes were played to the jury the defendant objected to the tapes in their entirety upon grounds of lack of foundation and immateriality and irrelevance. The objection on the ground of lack of foundation is not well taken. Proper foundation was laid and the defendant later admitted the conversation as well. The defendant's objection on the ground of immateriality is too broad. Where an offer consists of several statements tendered as a unit, e.g., a letter, a conversation, or a transcript of testimony, and parts are admissible and parts are not, objection should be made only to the improper parts and not to the offer as a whole. The general objection cannot avail the defendant on appeal to this court. O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123.

The limiting order was obviously not directed to preventing witnesses from testifying as to admissions against interest made by the defendant. It was directed to preventing witnesses from giving their opinion about the defendant or disclosing supposed past conduct. There was no violation of the pretrial order in this respect.

In dealing with the fourth and last assignment, some reference to the record is necessary. Property found in the suitcase was identified by four different witnesses as property stolen in burglaries of their respective homes. Money (coins and currency) was also stolen in the various burglaries but was not identified at trial and no attempt was made to do so. Coins and currency seldom have any distinctive markings. However, in the suitcase with the property identified as stolen and other property which could not be identified, was the money bag and contents. These were identified at trial as having been found in the suitcase. The defendant made several premature objections to the identification of the money bag and contents. These were overruled. No subse-

quent offer of the exhibit was ever made. The defendant argues that this was prosecutorial misconduct which warrants reversal and a new trial. The defendant cites ABA Standards Relating to the Prosecution Function, §§ 5.6(c) and (d), and our opinion in State v. Casados, 188 Neb. 91, 195 N. W. 2d 210, which characterizes these standards as being appropriate and proper. The standards mentioned are indeed appropriate and should be observed by prosecutors. We do not believe that there was any deliberate violation in this case. The record was sufficient to show that property found in the suitcase, although not specifically identified, was nonetheless probably stolen property. To demonstrate this it is necessary again to refer to the tape-recorded conversation between the sergeant and the defendant. During the course of that conversation, the sergeant asked defendant about certain property found in the search of Susan Humphrey's apartment, including two television sets. Defendant responded that Susan had had those sets for a long time. The sergeant then countered with the statement that defendant had said he knew all about the stuff. The conversation was then as follows: "MR. VAN ACKEREN: I know about the stuff I had in my suitcase. SERGEANT SZALEWSKI: Like what stuff? MR. VAN ACKEREN: My money. SERGEANT SZALEWSKI: What else? MR. VAN ACKEREN: And, let's see. I had some money and a couple gold rings, about three gold rings. SERGEANT SZALEWSKI: And you had about twenty some gold rings. MR. VAN ACKEREN: How many? SERGEANT SZALEWSKI: About twenty some gold rings. MR. VAN ACKEREN: Twenty rings? SERGEANT SZALEWSKI: A couple watches. A couple of those things have been made too, Steve. I'm just being honest with you. What do you want to say about those? MR. VAN ACKEREN: Suppose I brought a guy in and said — suppose I brought a guy in with me when I came down there that I bought them - that I say I bought them from and he agreed to it. SERGEANT

SZALEWSKI: Then he'd get stuck, wouldn't he? MR. VAN ACKEREN: Yeah, right. Okay, and that's all there is to it? SERGEANT SZALEWSKI: Well, if you got somebody that'll take the rap for you. Is that what you want? MR. VAN ACKEREN: Well, that's — I — I can prove where I got them at."

At the trial the defendant attempted to explain the presence of the rings by saying that Susan Humphrey had put them in without his knowledge and that he had later learned that they were obtained from one Killeen, who in turn had obtained the stuff from one Stolp. Stolp was called as a rebuttal witness. He denied this transaction with Killeen.

It appears to us that the presence of the money, along with the other property proved to be stolen and for the presence of which in his suitcase the defendant had no adequate explanation, was sufficient to make the money admissible. Why the bag and contents were not offered we do not know. Whether sufficient foundation has been laid for the admission of physical evidence must necessarily be determined on a case-by-case basis. In any event, we find beyond a reasonable doubt that the mere display of the money bag did not affect the result in this case.

AFFIRMED.

BOSLAUGH, J., concurs in result.