STATE OF NEBRASKA, APPELLANT, V. DAVID T.
WALMSLEY, APPELLEE.
344 N.W.2d 450

Filed January 27, 1984. No. 83-853.

K. Randy Hood, Morrill County Attorney, for appellant.

James M. Heaton, for appellee.

SHANAHAN, J.

Pursuant to Neb. Rev. Stat. § 29-824 (Cum. Supp. 1982), the State of Nebraska appeals the judgment of the Morrill County District Court suppressing evidence seized while searching the residence of David T. Walmsley (Walmsley). The judgment of the district court is affirmed.

On August 7, 1983, the dispatcher for the Morrill County Sheriff's Department received a telephone call from a woman reporting "there [were] some strange looking weeds growing behind [Walmsley's] house." In response to that report and without any further investigation, the uniformed sheriff of Morrill County went to the house where Walmsley lived with his wife and children. Having arrived at the residence around 1:10 p.m., the sheriff knocked at the front door on the south side of the house and was greeted by Walmsley's wife, Helen, who then summoned Walmsley to the front door. What happened after that varies materially according to the three who witnessed the events.

According to the sheriff, Walmsley stood on the front steps of the house as the sheriff related the report about the "strange weeds." Walmsley responded, "Yeah, I'll get rid of them." The sheriff

testified, "I said I'd like to have . . . permission to take a look at them, so he then invited me to come around behind the house. . . . 'Come on back here.' " Walmsley and the sheriff walked along a driveway on the east side of the house and proceeded toward the backyard of the Walmsley residence. The backyard was 80 feet by 50 feet, with a fence on the north and west property lines. In the backyard Walmsley motioned to a cultivated, 40-foot row of 8-inch-high marijuana plants growing along the rear of the house. Upon seeing the marijuana plants the sheriff arrested Walmsley for "manufacturing a controlled substance," took him to the sheriff's office, informed Walmsley of his *"Miranda* rights," and had Walmsley sign a form acknowledging admonition of such rights. Later in the course of his discussion with Walmsley, the sheriff "stated to him [Walmsley] that being as he and his wife both had access to the property and everything that she also could possibly be arrested on that, and he asked me not to bother her and leave her alone because she had to take care of [the] children and that he would cooperate in any way that he could." After that conversation Walmsley signed a form entitled "Permission for Search and Seizure." Walmsley and the sheriff then returned to Walmsley's residence, where the sheriff entered Walmsley's house and obtained a small bag of marijuana, some "marijuana pipes," and some "roach clips."

Helen Walmsley testified that she was just within the screen door at the front of the Walmsley house when she heard the sheriff state to Walmsley, "I had a report that you were growing marijuana," and Walmsley's reply, "No, I'm not." The sheriff responded, "Don't lie to me or I'll just arrest you and take you down to the station, and if I come back and find anything, I'll take your wife, too." Helen further testified that the sheriff threatened to put Walmsley in jail and Helen "too," if Walmsley did not cooperate. Responding to the sheriff's question-

ing about growing marijuana plants, Walmsley then replied, "Well, I guess I am," and the sheriff said, "Let me see them." Walmsley and the sheriff walked around the house to the backyard. Through the screen door at the back of the house, Helen heard the sheriff state that he wanted photographs of the plants and then tell Walmsley, "I guess I'll have to place you under arrest for manufacturing marijuana." Walmsley and the sheriff left but returned to the Walmsley house and obtained the items mentioned in the sheriff's testimony.

David Walmsley testified about the initial conversation with the sheriff at the front of the Walmsley residence, namely, the report that Walmsley was growing marijuana and Walmsley's denial of the accusation. At Walmsley's denial the sheriff stated, "Well, don't lie to me . . . [i]f you don't cooperate with me, I'll take you and your wife both." Walmsley's response was, "Well, I guess I have some, but I will get rid of it . . . ." Walmsley testified that he felt intimidated under the circumstances or pressured by the sheriff, and was afraid. When the sheriff, referring to the backyard or the marijuana, stated, "I want to look at it," Walmsley and the sheriff then went to the backyard. After the sheriff observed the plants, Walmsley was arrested and taken to the sheriff's office, where Walmsley's constitutional rights were read to him and the sheriff commented, "I know you have some more stuff in the house and I want it." Regarding the written consent for search presented to Walmsley, the sheriff told Walmsley "if you [don't] cooperate with me and sign the search form that I [the sheriff] could still go back and get your wife. . . . Well, I know there's some stuff in there. If you don't cooperate with me, I'll just go get your wife, too." Walmsley signed the "Permission for Search and Seizure" form. The sheriff and Walmsley went back to Walmsley's house, where the sheriff obtained the articles previously described in the sheriff's testimony.

Charges were filed against Walmsley, namely, unlawful manufacture and distribution of a controlled substance in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1982); possession of marijuana (more than an ounce but less than a pound), § 28-416(4) (Cum. Supp. 1982); and possession of paraphernalia, Neb. Rev. Stat. § 28-441 (Cum. Supp. 1982).

At a hearing on Walmsley's motion questioning the legality of the search and seizure by the sheriff, the district court found there was no consent to the initial search at the Walmsley residence and suppressed "all evidence seized and all statements made."

The State appeals the district court's decision regarding physical evidence seized as a result of the search of the Walmsley premises and claims Walmsley consented to a search of his premises.

The right guaranteed by the fourth amendment to the U.S. Constitution and by article I, § 7, of the Nebraska Constitution, namely, freedom from unreasonable search and seizure, may be waived by consent of the person entitled such constitutional protection. See, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973); *Wren v. United States*, 352 F.2d 617 (10th Cir. 1965); *United States v. Miles*, 449 F.2d 1272 (10th Cir. 1971).

The Walmsley residence—the house and the fenced backyard—were places for which Walmsley had a reasonable expectation of privacy, which society is prepared to recognize and our Constitution is obligated to protect. Cf. *Katz v. United States*, 389 U.S. 347, 88 S. Ct. 507, 19 L. Ed. 2d 576 (1967); see, *Norman v. State*, 379 So. 2d 643 (Fla. 1980); *State v. Rickard*, 420 So. 2d 303 (Fla. 1982).

Where the government seeks to validate a search by consent, the burden is on the government to prove the consent claimed, i.e., the search was voluntarily permitted, invited, or agreed to by the person whose rights are involved. See, *Bumper v. North Carolina*, 391 U.S. 543, 88 S. Ct. 1788, 20

L. Ed. 2d 797 (1968); *Wren v. United States, supra*; *United States v. Miles, supra*; *State v. Rathburn*, 195 Neb. 485, 239 N.W.2d 253 (1976); *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975).

Mere submission to authority is insufficient to establish consent to a search. See, *Bumper v. North Carolina, supra*; *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981); cf. *Amos v. United States*, 255 U.S. 313, 41 S. Ct. 266, 65 L. Ed. 654 (1921).

The consent required to support a consensual search must be essentially free and unconstrained choice and not the product of a will "overborne" and a critically impaired "capacity for self-determination." See *Schneckloth v. Bustamonte, supra*; cf. *United States v. Watson*, 423 U.S. 411, 96 S. Ct. 820, 46 L. Ed. 2d 598 (1976).

Whether a person consented to a search is determined from the totality of circumstances surrounding the search. See, *Schneckloth v. Bustamonte, supra*; *State v. Van Ackeren, supra*.

Any consent to a search must be voluntary and not the result of duress or coercion—express, implied, physical, or psychological. See, *Schneckloth v. Bustamonte, supra*; *United States v. Fike*, 449 F.2d 191 (5th Cir. 1971); *Phelper v. Decker*, 401 F.2d 232 (5th Cir. 1968); 68 Am. Jur. 2d *Searches and Seizures* § 48 (1973); cf. *State v. Billups, supra*.

Whether there is a consensual search is a question of fact determined by the trial court—a decision which will not be set aside unless clearly erroneous. See *State v. Van Ackeren, supra*.

In determining whether the trial court's findings are clearly erroneous, the Supreme Court recognizes that the trial court is the "trier of fact," and the Supreme Court takes into consideration that the trial court observed the witnesses. See, *State v. Van Ackeren, supra*; *State v. Billups, supra*; cf. *Gregory v. Davis*, 214 Neb. 408, 334 N.W.2d 1 (1983).

In this case there is a disputed chronology concerning the sheriff's comments about the possible

arrest of Helen Walmsley. The sheriff admitted telling Walmsley at the sheriff's office that Helen "could possibly be arrested" for some offense related to the controlled substance, marijuana. On the other hand, Walmsleys indicate that the sheriff made such expression during the initial contact at the Walmsley residence. The sheriff's comments might reasonably lead Walmsley to conclude that discovery of marijuana on the premises would be probable cause to arrest Helen for illegal possession of a controlled substance. Cf. *United States v. Bolin*, 514 F.2d 554 (7th Cir. 1975), where the threatened arrest of the defendant's girl friend in his home, an arrest without probable cause, was held to preclude consent to a search of the defendant's premises. A fortiori the same consequence should exist in a situation involving a wife as in the present case.

Incarceration of a wife and concern at separation from children while their parents are in custody has to produce a mental state gravely and adversely affecting one's ability to make decisions. The trial court found that the sheriff's comments constituted duress or coercion of a psychological nature and to such an extent that Walmsley's consent to the search was impossible under the circumstances. There is no question that there was a search at the initial contact with Walmsley. The trial court resolved the dispute in chronology by finding that the threat of Helen's arrest occurred at the initial contact and thereby prevented consent, i.e., voluntariness, for the search and discovery of marijuana and paraphernalia on the premises. The illegality of the search at the initial contact precludes any propriety of the related and subsequent search upon return to the Walmsley residence after the initial contact by the sheriff.

Since the State has not argued any recognized exception to the warrant requirement except consent

to a search, there remains no ground on which the search may be upheld.

On the facts presented in this case, there is no showing that the decision of the district court is clearly erroneous. Consequently, the judgment of the district court is affirmed.

AFFIRMED.