STATE OF NEBRASKA, APPELLEE, V. WAYNE L. KONFRST, APPELLANT.

546 N.W.2d 67

Filed April 16, 1996. No. A–95–964.

Nile K. Johnson, of Johnson & Mock, for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

MILLER–LERMAN, Chief Judge, and IRWIN and MUES, Judges.

MILLER–LERMAN, Chief Judge.

Wayne L. Konfrst was convicted in a bench trial of possession of a controlled substance with intent to deliver, a violation of Neb. Rev. Stat. § 28–416(1)(a) (Cum. Supp. 1994). He appeals, claiming that the contraband evidence admitted at trial was seized in violation of his right to be free from unreasonable searches and seizures guaranteed by the 4th and 14th Amendments to the U.S. Constitution and article I, § 7, of the Nebraska Constitution. Because the evidence was seized in violation of Konfrst's constitutional rights, we reverse his conviction and remand the cause with directions to dismiss.

## STATEMENT OF FACTS

Following amendment of the original information on June 16, 1995, and dismissal of another charge on July 10, Konfrst was charged with possession of a controlled substance with intent to deliver, the incident alleged to have occurred in Washington County, Nebraska.

Prior to trial, Konfrst filed a motion to suppress any evidence found as a result of the search of his vehicle. The motion was denied. The trial court made no specific findings regarding the basis for its denial. Konfrst properly objected to the admission of the challenged evidence at trial.

Konfrst also filed a motion to exclude testimony regarding statements allegedly made to officers by David Uehling. This motion was denied. The trial court made no specific findings regarding the basis for its denial. Uehling died in an automobile accident a short time after the initial arrest of Konfrst took place.

The record from the suppression hearing of November 4, 1994, and the trial conducted on July 10, 1995, shows the following facts. See *State v. Huffman*, 181 Neb. 356, 148 N.W.2d 321 (1967), *cert. denied* 386 U.S. 1024, 87 S. Ct. 1384, 18 L. Ed. 2d 466. See, also, *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925). At about 1:30 a.m. on June 25, 1994, Officer Larry Sanchez of the Blair Police Department was on patrol in downtown Blair. While he was stopped at a flashing red light, his attention was drawn to the loud sound of a motor vehicle starting. He looked in the direction of the sound and saw a gray Chevy Blazer drive up on

the sidewalk. Sanchez activated his lights and followed the Blazer for approximately a block, during which time the Blazer turned into an alley behind the Blue Ribbon Bar. The Blazer turned westbound into the alley as Sanchez turned southbound, some distance behind the Blazer.

Sanchez' testimony is in conflict as to what happened next in the alley. At the suppression hearing, he testified that before he approached the Blazer, he observed three people exit it, Konfrst from the driver's side and Amy Goldyn and Uehling from the passenger side. At trial, he testified that all the occupants were inside the Blazer when he first approached it. Nevertheless, Sanchez testified at trial that the Blazer was stopped and parked in a marked parking stall behind the bar and was not on a public roadway blocking traffic in any way.

Sanchez approached Konfrst, whom he had observed driving the Blazer; asked for his driver's license and registration; smelled alcohol on Konfrst's breath; and then administered several field sobriety tests to Konfrst. The tests included the walk–and–turn test, the one–legged stand, the finger–to–nose test, and recitation of the alphabet. At all times that Sanchez had contact with Konfrst, Konfrst was outside the vehicle, and Sanchez did not look inside the vehicle. After Konfrst failed the field sobriety tests, Sanchez arrested him for driving while under the influence of alcohol (DUI), placed Konfrst in his patrol car, and removed him from the scene. Sanchez testified that he took Konfrst to a law enforcement facility.

Backup officer Jim Murcek arrived at the scene at some point during the administration of the field sobriety tests. Murcek testified that when he arrived at the scene, Konfrst was "some distance . . . approximately 25 feet" away from the vehicle, and one other male and one female were standing nearby. Murcek testified at trial that while standing next to Uehling approximately 25 feet away from Konfrst, he heard Konfrst say that Konfrst "wanted his vehicle released to Dave Uehling." Murcek then testified that he believed Uehling looked drunk and that he did not think Uehling should operate the vehicle. Murcek testified that Uehling stated "it would be better if Amy Goldyn took the vehicle."

The evidence regarding control and ownership of the vehicle is as follows: The parties stipulated to the testimony of Mary Jo Harris in an exhibit received into evidence at trial. The parties stipulated that if Harris were called she would state that she is the mother of Konfrst, that the Blazer was registered in her name, and that Konfrst was the purchaser of the Blazer and its primary operator up until the time of his arrest.

In connection with the control of the vehicle, Sanchez initially testified at the suppression hearing that the vehicle was left in the custody of his backup officers when he took Konfrst to the law enforcement facility and did not indicate that Konfrst said anything about giving anyone else at the scene control of the vehicle. However, Sanchez then testified during cross-examination that Konfrst told Cpl. Joseph Lager, a backup officer at the scene, that the vehicle was in the possession of Uehling. At trial, during direct examination, Sanchez testified that he did not hear Konfrst say "anything to anybody" prior to leaving the scene. On redirect, after refreshing his recollection with his police report, Sanchez testified that he had heard Konfrst say that he had had three or four beers, but Sanchez made no mention of Konfrst's delegating control of his vehicle to anyone else.

Lager was the supervisor on duty the night of June 25, 1994, and he went to the alley behind the Blue Ribbon Bar. Lager arrived after Sanchez and Murcek, but prior to Sanchez' removal of Konfrst from the scene. At both the suppression hearing and the trial, Lager testified that he asked Konfrst if he was the person in charge of the vehicle, and Konfrst stated that "he wasn't . . . the vehicle was his aunt's and that David Uehling was actually in charge of the vehicle." Lager also testified at the hearing and at trial that he heard Konfrst yell to Uehling to get Konfrst's money out of the Blazer and bail him out.

It is undisputed that prior to the time Konfrst was transported away from the parking lot, no search of the Blazer had been requested of him or performed. After Konfrst had been removed from the scene, Lager approached Uehling and told him that Konfrst had told Lager that Uehling had control of the Blazer.

Lager then asked Uehling if this was so. Uehling responded by saying, " 'I guess so.' "

Lager's testimony is consistent in that he quickly determined that Uehling was drunk. After determining that Uehling was under the influence of alcohol, Lager then asked if he could search the vehicle. Uehling responded by saying "to go ahead."

Lager moved the passenger seat forward and discovered a pile of cash on the floor under the seat. Lager testified at the suppression hearing that it was not until after the discovery of the cash that he then "had Mr. Uehling take control of the vehicle as Mr. Konfrst requested." According to Lager, Uehling picked up the money, revealing two plastic baggies which contained what were later determined to be controlled substances, marijuana and methamphetamine. Lager then arrested Uehling and Goldyn, who were searched, and police continued to search the vehicle, whereupon more of the methamphetamine was found inside a flashlight.

Based on the evidence found as a result of Lager's search of the passenger compartment, Lager had the vehicle impounded and towed away. Murcek later conducted an inventory search of the Blazer. Baggies and a triple-beam scale were found in a duffelbag in the cargo area of the Blazer during this later search. As a result of the foregoing, Konfrst was charged with possession of a controlled substance with intent to deliver.

Lager testified at both the suppression hearing and the trial that the Blair Police Department has a standard policy with regard to impoundment. At trial, Lager testified that the policy is written. The State did not offer into evidence the written policy to which Lager referred. At the suppression hearing, Lager stated that according to the policy, if there is a licensed operator who is competent to drive, the vehicle can be released to that person with permission of the arrestee. However, at trial, Lager testified that because the operator had been arrested for DUI, the vehicle would have been impounded anyway.

In connection with the impoundment, the record reveals that at all times, the vehicle was parked in a designated private parking stall; that the police had no reason to believe it was stolen; that the vehicle was not disabled or blocking traffic in a public roadway; that the driver had not been arrested for

reckless driving or driving under a suspended license; and that there was an apparently eligible driver, Goldyn, available to remove the vehicle. At the suppression hearing, Lager stated that given his "knowledge of Mr. Konfrst . . . from previous contacts, I would have impounded that vehicle anyway." There is no dispute in the record that Lager did not make the initial arrest, and Konfrst did not have any outstanding warrants at the time he was arrested for DUI.

The State called Investigator Darwin Shaw at trial for the purpose of proving intent to deliver. Shaw offered the opinion, based on the amounts of controlled substances found, the weighing scale, the baggies, and the cash, that these "constitute the possibility that somebody is dealing drugs."

At the close of the State's case, Konfrst made a motion for a directed verdict, inter alia, on the ground that the State had insufficient evidence with regard to the intent to deliver. Konfrst argued that there was no evidence of Konfrst's selling drugs to anyone and no evidence that he had ever sold drugs to anyone. The trial court overruled Konfrst's motion.

Konfrst presented no witnesses.

The trial court found that Konfrst was guilty beyond a reasonable doubt of possession of a controlled substance with intent to deliver. A presentence report was ordered.

On September 1, 1995, Konfrst was sentenced to 30 months to 5 years' incarceration. Konfrst appeals.

## ASSIGNMENTS OF ERROR

Konfrst assigns four errors, which may be summarized into two: (1) The trial court erred by denying his motion to suppress, overruling his renewed objection at trial, and admitting the challenged evidence, including the controlled substances, at trial, and (2) the trial court erred in overruling his motion for a directed verdict because there was insufficient evidence that he intended to deliver or distribute a controlled substance.

## STANDARD OF REVIEW

A trial court's ruling on a motion to suppress is to be upheld on appeal unless its findings of fact are clearly erroneous. *State v. Detweiler*, 249 Neb. 485, 544 N.W.2d 83

(1996); *State v. Grimes*, 246 Neb. 473, 519 N.W.2d 507 (1994); *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994).

In determining whether a trial court's findings on a motion to suppress are clearly erroneous, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Grimes, supra; Dyer, supra.*

## ANALYSIS

Konfrst argues that the warrantless search of his vehicle was unlawful. The State responds that the search was proper pursuant to the following exceptions to the warrant requirement: It was a search incident to an arrest, Uehling was authorized to and did give consent for the search, and there was probable cause to search the vehicle. We also address the issue of whether the search was a proper impound inventory search.

*Warrantless Searches and State's Burden of Proof.*

The Fourth Amendment and the Nebraska Constitution protect people against unreasonable searches and seizures by the government, including police officers. The Fourth Amendment applies to the State pursuant to *Mapp v. Ohio*, 367 U.S. 643, 81 S. Ct. 1684, 6 L. Ed. 2d 1081 (1961). Searches conducted pursuant to a warrant are generally considered reasonable. *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990) (single–judge opinion). There are several categories of searches considered reasonable under the Fourth Amendment, although conducted without a warrant. *Neely, supra.* The law is clear, however, that "[i]f police have acted without a search warrant, the State has the burden to prove that the search was conducted under circumstances substantiating the reasonableness of such search or seizure." *State v. Vermuele*, 241 Neb. 923, 925, 492 N.W.2d 24, 27 (1992).

*Search Incident to Arrest.*

The State argues that the search of the vehicle and its containers was reasonable as a search incident to an arrest pursuant to *Chimel v. California*, 395 U.S. 752, 89 S. Ct. 2034, 23 L. Ed. 2d 685 (1969), and *New York v. Belton*, 453

U.S. 454, 101 S. Ct. 2860, 69 L. Ed. 2d 768 (1981). We do not agree.

The rationale for permitting the warrantless search authorized by *Chimel* and *Belton* was to ensure officer safety by preventing an arrestee from gaining possession of a weapon and to prevent the concealment or destruction of evidence. In *Belton*, the U.S. Supreme Court held that when a "[police officer] has made a lawful custodial arrest of the occupant of an automobile, [the officer] may, as a contemporaneous incident of that arrest, search the passenger compartment of that automobile" and "containers found within the passenger compartment." 453 U.S. at 460. We are aware that the cases generally state that the fact that a defendant has been removed from a vehicle does not prevent the search of the vehicle so long as the search is "a contemporaneous incident of that arrest." *Id.* See, e.g., *U.S. v. White*, 871 F.2d 41 (6th Cir. 1989) (holding that search of defendant's vehicle while defendant was at scene handcuffed in police car was proper); *U.S. v. Lorenzo*, 867 F.2d 561 (9th Cir. 1989) (holding that search of defendant's car was proper where trial judge found that search and arrest for drunk driving were "contemporaneous"); *U.S. v. Karlin*, 852 F.2d 968 (7th Cir. 1988), *cert. denied* 489 U.S. 1021, 109 S. Ct. 1142, 103 L. Ed. 2d 202 (1989) (holding that search of defendant's van while defendant was placed in rear of squad car was proper); *United States v. McCrady*, 774 F.2d 868 (8th Cir. 1985) (holding that search of glove compartment "immediately" after arrest of individual who was not defendant was proper). Contra *State v. Giffen*, 98 Or. App. 332, 778 P.2d 1001 (1989) (holding that search was improper where defendant was not in vehicle).

The cases which permit a search of a vehicle incident to an arrest where the arrestee is outside the vehicle clearly rest on a finding that the search is contemporaneous with the arrest. However, where the arrestee is outside the vehicle and the search is not contemporaneous with the arrest as required by *Belton*, the search is improper. E.g., *U.S. v. Vasey*, 834 F.2d 782 (9th Cir. 1987) (holding that where arrestee was handcuffed in rear of police vehicle and search of vehicle was not contemporaneous with arrest, search was constitutionally

infirm). The U.S. Court of Appeals for the Ninth Circuit stated in *Vasey* that a search which is not contemporaneous with the arrest falls outside the *Belton* prophylactic rule. In *Vasey*, the court stated: "Simply because the officers had the right to enter the vehicle during or immediately after the arrest, a continuing right was not established to enter the vehicle without a warrant." *Id.* at 787.

In the instant case, the undisputed facts show that Sanchez pulled his patrol car into the parking lot of the Blue Ribbon Bar after Konfrst had parked the Blazer. Konfrst, Uehling, and Goldyn exited the car. Sanchez approached Konfrst and asked him to perform field sobriety tests. A period of time passed as Konfrst attempted to perform the tests. Murcek and Lager stood by as backup officers during the foregoing tests. Thereafter, Konfrst was arrested, placed in the patrol car, removed from the scene, and taken to a law enforcement facility. The officers did not ask Konfrst, the driver, to search the Blazer.

After Konfrst had been removed from the scene, Lager had a dialog with Uehling regarding the removal of the vehicle. Lager testified about his subsequent observation regarding Uehling's condition. Lager then asked Uehling if Lager could search the vehicle. Lager, who was not the arresting officer, eventually searched the Blazer after Konfrst had been taken away by Sanchez.

Under the cases, a search incident to an arrest must be contemporaneous with the arrest. *Belton, supra.* In the instant case, after Konfrst had been arrested, put in a patrol car, and removed from the scene, the searching officer engaged in conversation with Uehling and, thereafter, searched the vehicle. The facts of this case taken as a whole show that the search was delayed to the point that it could not be properly concluded that it was contemporaneous with the arrest. To the extent the trial judge approved of the search under the theory that it was a search incident to an arrest, the admission of evidence based on such an unlawful search was improper.

### Consent to Search Konfrst's Vehicle.

As a preliminary matter, the State argues that Konfrst lacks standing to challenge the validity of the search of the vehicle

based on Uehling's consent. Because the record shows that Harris transferred the vehicle to Konfrst, he has a possessory interest in the vehicle and has standing to challenge the search of the vehicle. See *Brown v. United States*, 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973). As to the warrantless search of the duffelbag, Konfrst has standing to challenge the search under Neb. Rev. Stat. § 29–822 (Reissue 1995) because he is a person aggrieved by the search and seizure and the search was directed at him. See *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975).

The State argues that the search was proper because Uehling was authorized to and did give consent to Lager to search the vehicle. We do not agree. ˋ

▇ In *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974), the U.S. Supreme Court held that a warrantless search by law enforcement officers is proper where the officers have obtained the consent of a third party who possesses common authority over the premises. In *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990), the U.S. Supreme Court held that a warrantless search is valid when based upon consent of a third party who the police, at the time of the search, reasonably believed possessed common authority over the premises, but who in fact did not. These propositions apply to automobile searches. See *Van Ackeren, supra*.

▇ The Fourth Amendment assures individuals "not that no . . . search [of one's vehicle] will occur unless [one] consents; but that no such search will occur that is 'unreasonable.' " *Rodriguez*, 497 U.S. at 183. The reasonableness of the search depends on the surrounding circumstances. *Id*. In *Rodriguez*, the U.S. Supreme Court held that a search based on the consent of an individual who appeared to possess common authority over the premises is valid, even if it is later demonstrated the individual did not possess such authority. Importantly, *Rodriguez* also noted that even if an individual invites a search, where the surrounding circumstances are such that a reasonable person would objectively doubt the invitation's validity, the invitation should not be acted upon without further inquiry.

In the case before us, although the testimony shows that Uehling responded to Lager's request to search with "go ahead," the surrounding facts would have caused a reasonable person to doubt Uehling's authority to give such consent, and the search should not have proceeded without further inquiry. In the instant case, the officers gathered in the parking lot of the Blue Ribbon Bar, and it was apparent that the driver of the Blazer was Konfrst, who was being arrested for DUI. None of the officers asked Konfrst, the individual obviously in physical control of the vehicle, for permission to search. Lager waited until after Konfrst was removed from the scene before asking for Uehling's consent. Uehling was known not to be the driver. The undisputed testimony is that Uehling was drunk and in no condition to drive and that Uehling never had physical control of the vehicle. Intoxication is a factor relevant to assessing the validity of consent. *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992). So too, Uehling's consent to search articulated as "go ahead" approaches mere submission to authority. See *State v. Walmsley*, 216 Neb. 336, 344 N.W.2d 450 (1984).

In connection with a reasonable assessment of Uehling's interest in the vehicle, at trial, Murcek stated that Konfrst "made a comment to the fact that he wanted his vehicle released to Dave Uehling." Lager testified at the hearing on the motion to suppress that "I asked Mr. Konfrst if that was his vehicle. He said that it was his aunt's and his aunt gave control of the vehicle to David Uehling . . . ." His trial testimony was consistent with this statement.

The State argues that Uehling had common authority over the vehicle, and therefore, his consent to search was valid. Common authority justifying a valid consent to search rests on "mutual use of the property by persons generally having joint access or control for most purposes." *Matlock*, 415 U.S. at 171 n.7. In the instant case, notwithstanding Lager's testimony that Uehling gave verbal consent, an objective view of the surrounding facts at the time preceding the consent to search reveals they are such that a reasonable person would doubt the validity of Uehling's consent.

The undisputed facts are that Konfrst was the only one to drive the Blazer. Uehling never took physical possession of the

vehicle and never exhibited "mutual use." Uehling was too drunk to drive. The vehicle was said to belong to Konfrst's aunt, or, according to Murcek, the vehicle was Konfrst's. Common authority requires mutual use and joint access or control for most purposes. Uehling had no objective signs of control over the vehicle, and even if he had some measure of control, the officers would have been unreasonable in believing, without further inquiry, that the control of the aunt's or Konfrst's vehicle was "for most purposes." Lager also testified that before the search, Konfrst had indicated that there was money in the vehicle and that the money was Konfrst's, thus implying that use, if not exclusive, was Konfrst's. Lager also testified that after tilting the seat, he found a wad of bills on the floorboard behind the passenger seat and thereafter had Uehling "take control of the vehicle as Mr. Konfrst requested," thus implying Uehling was not in control of the vehicle at the time consent was sought from Uehling prior to the initial search under the passenger seat.

Based on an objective assessment of the facts, the officers did not have a reasonable belief that Uehling had common authority over the vehicle at the time they sought Uehling's consent, and it was subsequently shown at trial that he had no authority over the vehicle. Thus, the search of the vehicle was not justified under the common authority and consent exception. The admission of the evidence, if grounded on the basis of common authority, was improper.

*Probable Cause to Search.*

In its brief, the State limits its argument based on probable cause to the area in which the duffelbag was located, which was outside the passenger compartment and was searched subsequent to the search of the passenger compartment. Specifically, the State argues that the later search, which produced the duffelbag containing the baggies and triple–beam scale, was justified because the search of the passenger compartment was proper and the police had located methamphetamine and marijuana in this initial search. Thus, the State argues, the search of the passenger area was proper, and the contraband found there provided probable cause to search

the remainder of the vehicle. We do not agree that the search of the passenger area was proper.

■ Probable cause to search a vehicle must be based on an officer's reasonable belief based on personal knowledge or other trustworthy information that an offense has been or is being committed. *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992); *State v. Neely*, 236 Neb. 527, 462 N.W.2d 105 (1990) (single–judge opinion); *State v. Hoer*, 231 Neb. 336, 436 N.W.2d 179 (1989). Probable cause is evaluated by reference to the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983). The State does not argue that probable cause existed to search the passenger compartment. Although the officers knew that Konfrst had previously been arrested for possession of drugs and drug paraphernalia, the evidence shows that the officers had no particularized reason to search the passenger compartment of the vehicle on the evening in question. Because we conclude elsewhere in this opinion that the search of the passenger compartment was improper, the knowledge gained from that improper search taints the search of the cargo compartment where the duffelbag was found, and the evidence found in the duffelbag must be suppressed. See *Wong Sun v. United States*, 371 U.S. 471, 83 S. Ct. 407, 9 L. Ed. 2d 441 (1963). The admission of the evidence, if based on alleged probable cause, was improper.

*Impoundment and Inventory.*

The State does not specifically argue that the search was justified pursuant to the inventory exception. However, because there was officer testimony regarding impounding and inventorying the vehicle and the trial judge did not make a specific finding as to the basis for denying the motion to suppress and admitting the evidence, we briefly address the issue.

At trial, Lager testified that the Blair Police Department had a written policy and procedure regarding the impoundment of vehicles and the inventory of their contents. However, no such policy was offered in evidence at trial. Lager's testimony indicates that where a driver is available to drive a car away

from the scene of an arrest, according to the applicable policy, the eligible driver should be permitted to do so. Somewhat in contradiction, Lager also states that where an individual has been arrested for DUI, the vehicle will be impounded.

Under the cases, an inventory search is permissible after an arrest where the search is preceded by lawful custody of the vehicle and the search is conducted pursuant to standardized inventory criteria or established routine. *Florida v. Wells*, 495 U.S. 1, 110 S. Ct. 1632, 109 L. Ed. 2d 1 (1990); *Colorado v. Bertine*, 479 U.S. 367, 107 S. Ct. 738, 93 L. Ed. 2d 739 (1987); *Illinois v. Lafayette*, 462 U.S. 640, 103 S. Ct. 2605, 77 L. Ed. 2d 65 (1983); *South Dakota v. Opperman*, 428 U.S. 364, 96 S. Ct. 3092, 49 L. Ed. 2d 1000 (1976). An inventory policy need not be in writing. *State v. Filkin*, 242 Neb. 276, 494 N.W.2d 544 (1993). Following standardized procedures curtails pretextual searches. See *id*. In *Filkin*, the Nebraska Supreme Court stated that in connection with an inventory search, "the State bears the burden of proving that a law enforcement agency's search was made pursuant to . . . standardized criteria or established routine [as] required by the Fourth Amendment. . . . A failure of proof on the State's behalf requires a finding that the search suffered from constitutional infirmities." (Citation omitted.) 242 Neb. at 284, 494 N.W.2d at 550.

The testimony regarding the Blair Police Department's impoundment and inventory procedure is inadequate on this record. The evidence fails to establish that the alleged impoundment and inventory were conducted pursuant to standardized criteria or established routine such as those requiring the removal of a vehicle which is illegally parked, on a public roadway blocking traffic, or defective, or due to the unavailability of an eligible driver. See, e.g., *State v. Boster*, 217 Kan. 618, 539 P.2d 294 (1975), *overruled on other grounds, State v. Fortune*, 236 Kan. 248, 689 P.2d 1196 (1984). Indeed, the record shows that Goldyn was apparently sober and available to drive the Blazer home, which would appear to conform with the stated policy in Blair. Nor is there a statute applicable to this case requiring impoundment. See, e.g., Neb. Rev. Stat. § 60-6,217 (Reissue 1993) (requiring vehicle that is registered

to driver to be impounded following arrest of driver for second–offense reckless driving); Neb. Rev. Stat. § 60–4,110 (Reissue 1993) (requiring impoundment of vehicle where driver is arrested for driving while his or her license was suspended or revoked). To the extent there is testimony regarding the Blair procedures, it is incomplete and inconsistent. The State failed to prove that the search was performed pursuant to standardized criteria or established routine, and therefore, the admission of the evidence, if based on a search pursuant to an inventory policy, was not proper. See *Filkin, supra*.

*Sufficiency of Evidence.*

Konfrst argues that even if the evidence was properly admitted, there is insufficient evidence to convict him of possession with intent to deliver because he did not possess the drugs upon arrest and there is insufficient evidence that the drugs were intended for sale. Because we conclude that the evidence, including the controlled substances, should have been suppressed, we briefly discuss this assigned error and conclude that upon the exclusion of the challenged evidence, there would be insufficient evidence to convict Konfrst of possession of a controlled substance with intent to deliver as charged. See, *State v. Lee*, 227 Neb. 277, 417 N.W.2d 26 (1987); *State v. Noll*, 3 Neb. App. 410, 527 N.W.2d 644 (1995).

Because the officers' search of the vehicle violated constitutional protections against unreasonable searches and seizures, we conclude that the challenged evidence should have been excluded, and Konfrst's conviction is reversed and the cause remanded with directions to dismiss.

REVERSED AND REMANDED WITH
DIRECTIONS TO DISMISS.