STATE OF NEBRASKA, APPELLEE,
v. WAYNE L. KONFRST, APPELLANT.
556 N.W.2d 250

Filed December 6, 1996.   No. S-95-964.

216

Nile K. Johnson, of Johnson & Mock, for appellant.

Don Stenberg, Attorney General, and James A. Elworth for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

While Wayne L. Konfrst was being taken from the scene for a driving while under the influence of alcohol (DUI) arrest, he advised one of the arresting officers that his passenger, David

Uehling, was in charge of the vehicle. Uehling gave consent to search the vehicle. The officers found a wad of money and plastic baggies containing marijuana and methamphetamine. In a further search of a duffelbag in the vehicle, the officers found a scale and empty baggies.

Konfrst was convicted in a bench trial before the district court for Washington County of possession of a controlled substance with intent to deliver, in violation of Neb. Rev. Stat. § 28-416(1)(a) (Cum. Supp. 1994). The Nebraska Court of Appeals reversed Konfrst's conviction and remanded the cause with directions to dismiss, concluding that the evidence admitted against Konfrst at trial was seized in violation of his right to be free from unreasonable searches and seizures. *State v. Konfrst*, 4 Neb. App. 517, 546 N.W.2d 67 (1996). We granted the State's petition for further review.

We conclude that the search of the vehicle was consented to by one who had authority to consent and that the resulting search of the duffelbag was based on probable cause. We therefore reverse the judgment of the Court of Appeals and remand the cause with directions to reinstate the district court's judgment.

## I. BACKGROUND

At approximately 1:30 a.m. on June 25, 1994, Officer Larry Sanchez of the Blair Police Department was on patrol in downtown Blair, Nebraska. While he was stopped at a flashing red light, his attention was drawn to the loud sound of a motor vehicle starting. He looked in the direction of the sound and saw a gray Chevy Blazer jump the curb in front of Blue Ribbon Bar and drive down the sidewalk in front of four or five business establishments. Sanchez activated his lights and pursued the Blazer, which went down over the curb, onto the street, and turned into an alley behind the bar. The Blazer eventually came to a stop halfway down the alley and parked in a marked stall.

Three occupants were riding in the vehicle: Konfrst, Uehling, and Amy Goldyn. Sanchez approached Konfrst, whom he had observed driving the Blazer; asked for Konfrst's driver's license and registration; smelled alcohol on his breath; and then administered several field sobriety tests. The tests included the walk-

and-turn test, the one-legged stand, the finger-to-nose test, and recitation of the alphabet. After Konfrst failed all of these tests, Sanchez arrested him for DUI, placed him in the patrol car, and took him to a law enforcement facility.

### 1. DETERMINATION OF AUTHORITY TO CONSENT

Backup officer Jim Murcek arrived at the scene while Sanchez was administering the field sobriety tests to Konfrst. Murcek testified at trial that while standing next to Uehling, approximately 25 feet away from Konfrst, he heard Konfrst say that Konfrst "wanted his vehicle released to Dave Uehling."

Cpl. Joseph Lager arrived at the scene after Murcek, but prior to Sanchez' removal of Konfrst from the scene. At the suppression hearing, Lager testified that he asked Konfrst if the Blazer was his vehicle, and Konfrst stated that "it was his aunt's and his aunt gave control of the vehicle to David Uehling." At trial, Lager testified that he asked Konfrst if he was the person in charge of the vehicle, and Konfrst stated that "he wasn't . . . the vehicle was his aunt's and that David Uehling was actually in charge of the vehicle." Lager also testified at both the hearing and trial that he heard Konfrst yell to Uehling to get Konfrst's money out of the Blazer and bail him out of jail.

Sanchez testified on cross-examination at the suppression hearing that Lager asked Konfrst what he wanted to do with the vehicle and that Konfrst responded "the vehicle was in Dave Uehling's possession." However, at trial, during direct examination, Sanchez testified that he did not hear Konfrst say "anything to anybody" prior to leaving the scene. On cross-examination, Sanchez was asked whether Konfrst ever said that he wanted anyone else to have control of the vehicle. Sanchez responded, "Not to me, sir."

Although unknown to the officers at the time, the registered owner of the vehicle, Mary Jo Harris, was in fact the mother, rather than the aunt, of Konfrst. The parties stipulated to the testimony of Harris in an exhibit received into evidence at trial. The parties stipulated that if Harris were called, she would state that she is the mother of Konfrst, that the Blazer was registered in her name, and that Konfrst was the purchaser of the Blazer and its principal driver.

Lager testified at both the suppression hearing and the trial that the Blair Police Department has a standard written policy that if there is a licensed operator who is competent to drive, the officer in charge may release the vehicle to that person with the permission of the arrestee, but that the policy does not require the officer to release the vehicle.

Murcek testified that Uehling appeared to have been drinking and that it was his opinion that Uehling would not be able to operate a motor vehicle safely. Murcek further testified that Uehling stated that "it would be better if Amy Goldyn took the vehicle." Lager testified that he told Uehling that "I don't think you can drive, therefore, I'm not going to let you drive away," and that Uehling stated that he "didn't want to drive." Murcek and Lager each testified that they did not believe that Goldyn had been drinking.

At the suppression hearing, Lager testified that because of "the operator, being Mr. Konfrst, and my knowledge of Mr. Konfrst . . . from previous contacts, I would have impounded that vehicle anyway." At trial, Lager testified that "since the driver was arrested for D[U]I, [the vehicle] would have been impounded any way."

It is undisputed that prior to the time Konfrst was transported from the parking lot, no search of the Blazer had been requested of him or performed. After Konfrst was removed from the scene, Lager approached Uehling and told him that Konfrst had told Lager that Uehling had control of the Blazer. Lager then asked Uehling if this was so. Uehling responded by saying, " 'I guess so.' " Lager then asked if he could search the vehicle. Uehling responded "go ahead."

## 2. The Search

Lager then opened the passenger door of the Blazer and moved the backrest of the passenger seat forward, which caused the entire passenger seat to slide forward. He then saw a wad of cash on the passenger side floorboard, lying directly on top of two plastic baggies. The money, which was later determined to total exactly $600, and the baggies were not visible until after the seat was moved forward.

Uehling reached into the vehicle, picked up the money, and placed it in his right front pocket. After Uehling picked up the money, Lager then looked back inside the vehicle where the cash was taken and examined the plastic baggies. Lager discovered that one of the baggies contained a green leafy substance which smelled like marijuana and that the other baggie contained six individually wrapped plastic containers, each containing a brown granular substance. Lager suspected that the items were controlled substances. At that point, Lager requested Uehling to give him the money, and Uehling complied. Lager then arrested and searched Uehling and Goldyn.

While Uehling and Lager were searching the passenger side of the vehicle, Murcek went to the driver's side of the vehicle. Between the door and the driver's seat, Murcek found a flashlight that "rattled and made a funny noise," "felt funny," and would not turn on, so he opened it and found a baggie containing a whitish-tan powdery substance.

Once Uehling and Goldyn were arrested and taken to the law enforcement facility by Lager, Murcek proceeded to perform a complete inventory of the vehicle at the scene. Besides the items already mentioned, Murcek located an orange duffelbag in the rear cargo area of the Blazer, which duffelbag contained sandwich baggies and a large triple-beam scale. He also discovered a small white pipe behind the passenger's seat on the floorboard.

A chemical analysis confirmed that one of the baggies found under the wad of cash contained marijuana, as did the pipe. The chemical analysis further confirmed that the contents of the large plastic bag discovered inside the flashlight and of the six smaller baggies found under the wad of money were methamphetamine. As a result, Konfrst was charged with possession of a controlled substance with intent to deliver.

### 3. Suppression Hearing and Trial

Prior to trial, Konfrst filed a motion to suppress any evidence found as a result of the search of his vehicle. The district court denied the motion without stating its findings of fact. Konfrst properly objected to the admission of the challenged evidence at trial, which the district court likewise overruled.

The State called Investigator Darwin Shaw at trial for the purpose of proving intent to deliver. Shaw testified that he has been a police officer for 18 years and an investigator for 11 years, that he has received training and education with respect to the investigation of illegal drug cases, and that he has investigated "hundreds" of illegal drug cases.

Shaw stated that of the six individual baggies found under the wad of money, four of them weighed approximately 1 gram, one weighed about 1.5 grams, and one weighed approximately 3.4 grams, which Shaw said is commonly known as an eight ball. The large baggie found inside the flashlight weighed approximately 1 ounce. Shaw further testified, based on his training and experience, that the individually wrapped baggies of methamphetamine contained quantities commonly sold on the street, that the quantity of methamphetamine discovered was more than is commonly kept for personal use, that cash is the common mode of payment in drug cases, that the triple-beam scale discovered is a type of scale commonly used to weigh drugs such as methamphetamine, and that the empty baggies discovered appeared to be the same type as those used to hold the methamphetamine. Thus, Shaw stated that based on the amounts of controlled substances found, the weighing scale, the baggies, and the cash, his opinion was that these "constitute the possibility that somebody is dealing drugs."

At the close of the State's case, Konfrst made a motion for a directed verdict on the grounds that the State had insufficient evidence with regard to intent to deliver. The district court overruled Konfrst's motion. Konfrst did not present any evidence. The district court held that

> having considered all of the evidence presented and the various factors, the scale, the money, the individual baggies, and all of the circumstances of the case, I find that there is proof beyond a reasonable doubt that the defendant did as charged on June 25th, 1994, in Washington County, Nebraska, did then and there unlawfully, knowingly or intentionally possess with the intent to distribute, deliver, or dispense a controlled substance, to-wit: . . . methamphetamine . . . .

Konfrst was sentenced to a term of not less than 30 months nor more than 5 years in the custody of the Nebraska Department of Correctional Services. The Court of Appeals reversed Konfrst's conviction and remanded the cause with directions to dismiss, concluding that the evidence admitted against Konfrst at trial was seized in violation of his right to be free from unreasonable searches and seizures. See, U.S. Const. amends. IV and XIV; Neb. Const. art. I, § 7. We granted the State's petition for further review.

## II. ASSIGNMENTS OF ERROR

In its petition for further review, the State asserts that the Court of Appeals erred in concluding that the law enforcement officers illegally searched the vehicle and seized the items found therein.

In his appeal to the Court of Appeals, Konfrst asserted that the district court erred (1) when it overruled his motion to suppress, because none of the exceptions to the search warrant requirement existed; (2) when it overruled his motion to suppress, because, assuming that consent for the search of the vehicle was properly given, the consent did not extend to the duffelbag found inside the vehicle; (3) when it admitted evidence at trial that was obtained though an unlawful search of the vehicle and duffelbag found inside of the vehicle; and (4) when it overruled his motion for directed verdict, because there was insufficient evidence to prove beyond a reasonable doubt that he intended to deliver or distribute methamphetamine.

## III. STANDARDS OF REVIEW

In light of the U.S. Supreme Court's decision in *Ornelas v. U.S.*, ___ U.S. ___, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), the traditional clearly erroneous standard of review of a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search is no longer applicable. The clearly erroneous standard has now been supplanted by a two-stage standard in which the ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed

for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id.*

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. See, *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996). In making this determination, an appellate court does not reweigh the evidence or resolve conflicts in the evidence, but, rather, recognizes the trial court as the finder of fact and takes into consideration that it observed the witnesses. *Id.*

In reviewing a criminal conviction, an appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence. Such matters are for the finder of fact, and a conviction will be affirmed, in the absence of prejudicial error, if the properly admitted evidence, viewed and construed most favorably to the State, is sufficient to support the conviction. *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996); *State v. Brozovsky*, 249 Neb. 723, 545 N.W.2d 98 (1996).

## IV. ANALYSIS

### 1. WHETHER EVIDENCE ADMITTED AT TRIAL WAS ILLEGALLY SEIZED

The State asserts that the Court of Appeals erred in concluding that law enforcement officers illegally searched Konfrst's vehicle and seized the items found therein. Both the Fourth Amendment to the U.S. Constitution and article I, § 7, of the Nebraska Constitution protect against unreasonable searches and seizures by the government. *State v. Newman, supra.*

Searches conducted outside the judicial process, without prior approval by a judge or magistrate, are per se unreasonable under the Fourth Amendment, subject only to a few specifically established and well-delineated exceptions. *Id.* Less rigorous requirements govern searches of automobiles, not only because of the element of mobility, but because the expectation of privacy with respect to one's automobile is significantly less than that relating to one's home or office. *State v. Hill*, 214 Neb. 865,

336 N.W.2d 325 (1983). One has a lesser expectation of privacy in a motor vehicle because its function is for transportation purposes and it seldom serves as one's residence or as the repository of personal effects. *United States v. Chadwick*, 433 U.S. 1, 97 S. Ct. 2476, 53 L. Ed. 2d 538 (1977); *Cardwell v. Lewis*, 417 U.S. 583, 94 S. Ct. 2464, 41 L. Ed. 2d 325 (1974); *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981). As such, the recognized exceptions to the Fourth Amendment's warrant requirement as applied to automobiles include probable cause, exigent circumstances, consent, search incident to arrest, inventory search, and plain view. See, generally, 68 Am. Jur. 2d *Searches and Seizures* §§ 61 and 62 (1993).

### (a) Consent to Search

#### (i) Standing

As a preliminary matter, the State argues that Konfrst lacks standing to challenge the validity of the search of the vehicle based on the claim that Uehling did not have the authority to give consent to search. A "standing" analysis in the context of search and seizure is nothing more than an inquiry into whether the disputed search and seizure has infringed an interest of the defendant in violation of the protection afforded by the Fourth Amendment. *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995). See, also, Neb. Rev. Stat. § 29-822 (Reissue 1995). The test used to determine if a defendant has an interest protected by the Fourth Amendment is whether the defendant has a "legitimate expectation of privacy in the premises." *State v. Conklin*, 249 Neb. 727, 731, 545 N.W.2d 101, 105 (1996). Because the record shows that Konfrst had a possessory interest in the vehicle and duffelbag, we determine that he had a legitimate expectation of privacy in the vehicle and duffelbag and, thus, standing to challenge the search thereof. See, *Brown v. United States*, 411 U.S. 223, 93 S. Ct. 1565, 36 L. Ed. 2d 208 (1973); *State v. Van Ackeren*, 194 Neb. 650, 235 N.W.2d 210 (1975).

#### (ii) Authority to Consent

The right to be free from unreasonable searches and seizures may be waived by the consent of the citizen. *State v. Graham*, 241 Neb. 995, 492 N.W.2d 845 (1992). When the prosecution

seeks to justify a warrantless search by proof of voluntary consent, it is not limited to proof that the consent was given by the defendant, but may show that the permission to search was obtained from a third party who possessed common authority over or other sufficient relationship to the premises or effects sought to be inspected. *State v. Billups*, 209 Neb. 737, 311 N.W.2d 512 (1981). See, also, *United States v. Matlock*, 415 U.S. 164, 94 S. Ct. 988, 39 L. Ed. 2d 242 (1974); *State v. Walker*, 236 Neb. 155, 459 N.W.2d 527 (1990). Furthermore, a warrantless search is valid when based upon consent of a third party whom the police, at the time of the search, reasonably believed possessed authority to consent to a search of the premises, even if it is later demonstrated that the individual did not possess such authority. *Illinois v. Rodriguez*, 497 U.S. 177, 110 S. Ct. 2793, 111 L. Ed. 2d 148 (1990).

In his appeal to the Court of Appeals, Konfrst asserted that Uehling did not have the authority to consent to a search of the vehicle and that the officers did not have an objectively reasonable belief that such authority existed. The Court of Appeals held that

> it was apparent that the driver of the Blazer was Konfrst, who was being arrested for DUI. None of the officers asked Konfrst, the individual obviously in physical control of the vehicle, for permission to search. Lager waited until after Konfrst was removed from the scene before asking for Uehling's consent. Uehling was known not to be the driver. . . .
>
>  . . . .
>
> Based on an objective assessment of the facts, the officers did not have a reasonable belief that Uehling had common authority over the vehicle at the time they sought Uehling's consent, and it was subsequently shown at trial that he had no authority over the vehicle. Thus, the search of the vehicle was not justified under the common authority and consent exception. The admission of the evidence, if grounded on the basis of common authority, was improper.

*State v. Konfrst*, 4 Neb. App. 517, 528-29, 546 N.W.2d 67, 74-75 (1996).

The facts show that Harris was the registered owner of the vehicle. Because Harris was not present in the vehicle, and because her last name is different from that of any of the three occupants of the vehicle, it would have been reasonable for the officers to look to Konfrst, the driver, for consent to search. See *People v. Harris*, 199 Ill. App. 3d 1008, 557 N.E.2d 1277 (1990). See, also, *U.S. v. Dunkley*, 911 F.2d 522 (11th Cir. 1990).

However, when Lager asked Konfrst if the Blazer was his vehicle, Konfrst stated that the vehicle was his aunt's and that Uehling was in control of the vehicle. Moreover, when Lager asked Uehling whether it was true that Uehling was in charge of the vehicle, Uehling responded, " 'I guess so.' " Thus, both Konfrst and Uehling stated that Uehling was in control of the vehicle before any of the officers asked anyone for consent to search the vehicle. We are unaware of any case law holding that when the driver of a vehicle specifically disavows control of the vehicle, stating that a passenger possesses control, and the passenger affirms that statement, the police must nonetheless ask the driver, and not the passenger, for consent to search the vehicle. As a result of what the officers were told by both Konfrst and Uehling, we conclude that it was objectively reasonable for the officers to believe that Uehling possessed authority to consent to a search of the vehicle.

### (iii) Whether Consent Was Freely and Voluntarily Given

The State must prove that the consent to search was freely and voluntarily given. *State v. Pope*, 239 Neb. 1009, 480 N.W.2d 169 (1992). See, also, *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989). In order for consent to search to be valid, it must be the result of a free and unconstrained choice and not the product of the will overborne. *State v. Graham*, 241 Neb. 995, 492 N.W.2d 845 (1992); *State v. Juhl, supra*. It cannot be the result of duress or coercion, whether express, implied, physical, or psychological. *Id*. See, also, *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S. Ct. 2041, 36 L. Ed. 2d 854 (1973). This determination is based on the totality of the circumstances. *Id.*; *State v. Graham, supra*; *State v. Juhl, supra*. While knowledge of the right to withhold consent is a factor to be considered, it is not a

prerequisite to establishing a voluntary and intelligent consent. *Schneckloth v. Bustamonte, supra*; *State v. Wood*, 195 Neb. 353, 238 N.W.2d 226 (1976).

Lager testified that when he asked Uehling if he could search the vehicle, Uehling responded "go ahead." The Court of Appeals held:

> The undisputed testimony is that Uehling was drunk and in no condition to drive and that Uehling never had physical control of the vehicle. Intoxication is a factor relevant to assessing the validity of consent. *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992). So too, Uehling's consent to search articulated as "go ahead" approaches mere submission to authority.

*State v. Konfrst*, 4 Neb. App. at 528, 546 N.W.2d at 74.

Konfrst never asserted that Uehling did not say "go ahead" when asked by Lager whether he could search the vehicle. Furthermore, there is no evidence in the record, nor is there any contention by Konfrst, that Uehling's consent was involuntarily given or the product of duress or coercion. Thus, we fail to see how the response "go ahead" approaches mere submission to authority.

There is evidence that the officers believed that Uehling had been drinking alcohol and that he would not be able to operate a vehicle safely. The mere fact of intoxication is not conclusive on the issue of voluntariness of a statement or a consent given by a defendant. *State v. Melton*, 239 Neb. 790, 478 N.W.2d 341 (1992). A defendant must be so intoxicated that he is unable to understand the meaning of his statements. *Id.*

In *Melton*, the defendant gave a statement to police officers that he had discharged his firearm at an automobile or residence of another police officer, and he also gave consent for the officers to search his home for the purpose of finding and removing the firearm. The court held that the defendant's statement and consent were knowingly, voluntarily, and intelligently given, even though his blood alcohol level at that time was .158 percent. The court reasoned that the defendant was able to understand the meaning of his statements because he was able to accurately relate events and circumstances surrounding the shooting; volunteered information regarding the gun he had

used, including its caliber and type; and knew that he had the right to remain silent in the presence of police officers.

In the instant case, the record does not support a finding that Uehling was so intoxicated that he was unable to understand the meaning of his statement "go ahead," in response to Lager's request for consent to search the vehicle. In fact, the record shows that Uehling was able to answer the officers' questions and respond to their commands, that Uehling understood and responded to Konfrst's command to get Konfrst's money out of the Blazer in order to bail him out of jail, and that Uehling had the presence of mind to state that he "didn't want to drive" and that "it would be better if Amy Goldyn took the vehicle." Thus, the evidence in the record leads us to conclude that Uehling's consent was the result of a free and unconstrained choice, and not the product of the will overborne. See, *State v. Graham*, 241 Neb. 995, 492 N.W.2d 845 (1992); *State v. Juhl*, 234 Neb. 33, 449 N.W.2d 202 (1989).

A trial court's ruling on a motion to suppress, apart from determinations of reasonable suspicion to conduct investigatory stops and probable cause to perform warrantless searches, is to be upheld on appeal unless its findings of fact are clearly erroneous. See, *State v. Newman*, 250 Neb. 226, 548 N.W.2d 739 (1996); *State v. Bowers*, 250 Neb. 151, 548 N.W.2d 725 (1996). In the instant case, Konfrst's motion to suppress essentially asserted that no exceptions to the Fourth Amendment's warrant requirement were applicable. However, the district court did not make any specific findings of fact, in writing or from the bench, when it overruled the motion.

In *State v. Osborn*, 250 Neb. 57, 67, 547 N.W.2d 139, 145 (1996), after discussing how essential findings of fact are to proper appellate review, this court held that "[h]enceforth, district courts shall articulate in writing or from the bench their general findings when denying or granting a motion to suppress." It is noted that Konfrst's motion to suppress was denied by the district court before *Osborn* was released.

In other cases, we determined that certain findings of fact were implicit in the lower court's decision. See, e.g., *State v. DeGroat*, 244 Neb. 764, 508 N.W.2d 861 (1993) (although no specific finding was made regarding location of controlled sub-

stance in relationship to defendant, such finding was unimportant because alternative findings supported conclusion that defendant was in possession of controlled substance); *State v. Morrison*, 243 Neb. 469, 500 N.W.2d 547 (1993) (implicit in trial court's denial of motion to suppress is that court would have had to find certain fact); *State v. Martin*, 243 Neb. 368, 500 N.W.2d 512 (1993) (stating that district court must not have believed defendant's testimony).

We determine that implicit in the trial court's decision in the instant case is the finding that Uehling possessed the authority to, and did in fact, consent to a search of the vehicle. As a result, we conclude that the Court of Appeals erred in determining that the district court's decision to overrule Konfrst's motion to suppress the contraband discovered underneath the wad of money was clearly erroneous.

### (b) Probable Cause

Before the Court of Appeals, Konfrst asserted that the district court erred when it overruled his motion to suppress, because, assuming that consent for the search of the vehicle was properly given, the consent did not extend to the duffelbag found inside the vehicle. Consent may be withdrawn or limited at any time prior to the completion of a search. *State v. French*, 203 Neb. 435, 279 N.W.2d 116 (1979). Because Uehling was arrested and removed from the scene prior to the time Murcek searched the duffelbag, Uehling did not have the opportunity to revoke his consent. As a result, we determine that Uehling's consent to search did not extend to the search of the duffelbag.

However, the U.S. Supreme Court held long ago in *Carroll v. United States*, 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543 (1925), that a warrantless search of an automobile by police officers with probable cause to believe the vehicle contains contraband is permissible under the Fourth Amendment. See, also, *State v. Vermuele*, 241 Neb. 923, 492 N.W.2d 24 (1992); *State v. Gerjevic*, 236 Neb. 793, 463 N.W.2d 914 (1990). Probable cause means " 'a fair probability that contraband or evidence of a crime will be found.' " *United States v. Sokolow*, 490 U.S. 1, 7, 109 S. Ct. 1581, 104 L. Ed. 2d 1 (1989) (quoting *Illinois v. Gates*, 462 U.S. 213, 103 S. Ct. 2317, 76 L. Ed. 2d 527 (1983)).

Once again, the district court did not make any specific findings of fact when it overruled Konfrst's motion to suppress. However, we determine that implicit in the trial court's decision is the finding that the officers had probable cause to search the duffelbag located in the cargo area of the vehicle.

In light of the Supreme Court's decision in *Ornelas v. U.S.*, ___ U.S. ___, 116 S. Ct. 1657, 134 L. Ed. 2d 911 (1996), the traditional clearly erroneous standard of review of a district court's determinations of reasonable suspicion to conduct an investigatory stop and probable cause to perform a warrantless search is no longer applicable. The clearly erroneous standard has now been supplanted by a two-stage standard in which the ultimate determinations of reasonable suspicion and probable cause are reviewed de novo and findings of fact are reviewed for clear error, giving due weight to the inferences drawn from those facts by the trial judge. *Id.*

In *State v. Watts*, 209 Neb. 371, 307 N.W.2d 816 (1981), this court held that the finding of a quantity of suspected illicit drugs by an officer making a legitimate search of an automobile may serve to substantiate that officer's suspicions and furnish additional probable cause for him to make a complete search of the vehicle. The court reasoned, "Having found a quantity of illicit drugs in one part of the automobile does not sensibly suggest the probability that no more such substance is present." *Id.* at 374, 307 N.W.2d at 819.

In the instant case, the officers lawfully discovered items believed to be methamphetamine and marijuana in the vehicle prior to searching the duffelbag. These discoveries inevitably led the officers to conclude that there was a fair probability that other contraband or evidence of a crime would be found in the vehicle. Thus, we determine based on our de novo review that probable cause to search the vehicle for further contraband attached at the moment Lager and Murcek discovered contraband under the wad of money and in the flashlight. This probable cause obviated the need for the officers' reliance on Uehling's consent in order to continue the search.

Both this court and the U.S. Supreme Court have relied on the automobile exception to a search warrant requirement in upholding searches of containers found during a probable cause

search of a vehicle. When the police have probable cause prior to instituting any search, they may search the entire vehicle (interior compartments and trunk), including any package, luggage, or container that might reasonably hold the item for which they had probable cause to search. See *State v. McGuire*, 218 Neb. 511, 357 N.W.2d 192 (1984). See, also, *California v. Acevedo*, 500 U.S. 565, 111 S. Ct. 1982, 114 L. Ed. 2d 619 (1991); *United States v. Ross*, 456 U.S. 798, 102 S. Ct. 2157, 72 L. Ed. 2d 572 (1982).

In *State v. Vermuele, supra*, police officers, with probable cause to search an automobile for narcotics, searched inside a wallet found on the dashboard of the vehicle. This court held that the scope of a warrantless search authorized by the automobile exception is no broader and no narrower than a magistrate could legitimately authorize by warrant. *Id.*, citing *United States v. Ross, supra*. If probable cause justifies the search of a lawfully stopped vehicle, it justifies the search of every part of the vehicle and its contents that may conceal the object of the search. *Id*. Thus, the scope of a warrantless search of an automobile is not defined by the nature of the container in which the contraband is secreted, but is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *Id*. See, also, *State v. Hansen*, 221 Neb. 103, 375 N.W.2d 605 (1985); *State v. McGuire, supra*.

In the instant case, the officers' search of the duffelbag was reasonable because controlled substances, for which the officers had probable cause to search, could easily have been hidden in the duffelbag. Furthermore, neither the passage of several hours between an arrest and search nor the immobilization of a vehicle by placing it in police custody invalidates a probable cause basis for conducting a warrantless automobile search. *State v. Gerjevic*, 236 Neb. 793, 463 N.W.2d 914 (1990).

Thus, in the instant case, we determine that the methamphetamine seized during the warrantless search of the vehicle was the product of a reasonable search conducted pursuant to Uehling's consent to search, which ultimately led to the establishment of probable cause to further search the vehicle, including the duffelbag discovered in the rear cargo area. As a result,

we conclude the Court of Appeals erred in determining that the district court erred in overruling Konfrst's motion to suppress.

## 2. WHETHER SUFFICIENT EVIDENCE EXISTED TO SUPPORT CONVICTION

Finally, Konfrst asserted before the Court of Appeals that the district court erred when it overruled his motion for directed verdict, because there was insufficient evidence to prove beyond a reasonable doubt that he intended to deliver or distribute methamphetamine. In a criminal case, a court can direct a verdict only when there is a complete failure of evidence to establish an essential element of the crime charged or the evidence is so doubtful in character, lacking probative value, that a finding of guilt based on such evidence cannot be sustained. *State v. Dyer*, 245 Neb. 385, 513 N.W.2d 316 (1994); *State v. Hirsch*, 245 Neb. 31, 511 N.W.2d 69 (1994).

In *State v. Hernandez*, 242 Neb. 78, 493 N.W.2d 181 (1992), this court held that circumstantial evidence to establish possession of a controlled substance with intent to deliver may consist of the quantity of the substance, the equipment and supplies found with it, the place it was found, the manner of packaging, and the testimony of witnesses experienced and knowledgeable in the field.

In the instant case, the State called Shaw as a witness for the purpose of proving intent to deliver. Shaw testified, based on his considerable training and experience, that the individually wrapped baggies of methamphetamine contained quantities commonly sold on the street, that the quantity of methamphetamine discovered was more than is commonly kept for personal use, that cash is the common mode of payment in drug cases, that the triple-beam scale discovered is a type of scale commonly used to weigh drugs such as methamphetamine, and that the empty baggies discovered appeared to be the same type as those used to hold the methamphetamine. Shaw then offered the opinion that based on the amounts of controlled substances found, the weighing scale, the baggies, and the cash, these "constitute the possibility that somebody is dealing drugs." Thus, based on the properly admitted evidence, when viewed and construed most favorably to the State, we conclude that

there existed sufficient evidence to support the conviction. See, *State v. Beethe*, 249 Neb. 743, 545 N.W.2d 108 (1996); *State v. Brozovsky*, 249 Neb. 723, 545 N.W.2d 98 (1996).

## V. CONCLUSION

We conclude that the district court did not err in overruling Konfrst's motion to suppress and that there was sufficient evidence to support the conviction. As a result, we reverse the judgment of the Court of Appeals and remand the cause with directions to reinstate the district court's judgment.

REVERSED AND REMANDED WITH DIRECTIONS.